## WILL RUTHERFORD V. THE STATE.

### No. 1398. Decided April 13, 1898.

**1.  Tenpins—Betting at—Indictment.**

It is not essential to the validity of an indictment for betting at a game of tenpins that it should allege that said tenpin alley was then and there kept and exhibited for the purpose of gaming.

**2.  Occupation Tax on and License of Tenpin Alleys—Repeal of Penal Statute by Implication.**

Article 5049, subdivision 19, Revised Statutes, as amended by act of the Twenty-fifth Legislature, p. 51, levying an occupation tax upon and the license of tenpin alleys, was evidently intended by the Legislature to authorize the playing of the game in the manner theretofore customary, that is, to permit the players, as between themselves, to wager the alley fees on the game; and it is not now a violation of law to bet on such games, article 388, Penal Code, prohibiting the betting upon such games, being repealed by implication.

APPEAL from the County Court of Limestone.   Tried below before Hon. A. J. HARPER, County Judge.

Appeal from a conviction for betting at a game of tenpins; penalty, a fine of $10.

No statement necessary.

No briefs for either party have come to the hands of the Reporter.

*W. W. Walling* and *Mann Trice,* Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was convicted of betting at a game of tenpins, and his punishment assessed at a fine of $10; hence this appeal.

Appellant made a motion to quash the indictment, on the grounds: "First, because the tenpin alley is taxed, licensed, and permitted by law, and the tenpin alley upon which said betting is said to have been committed, as defendant is informed and believes, is a tenpin alley upon which the State, county, and city taxes have been paid; and it is no offense against the laws of this State to bet at a tenpin alley which is taxed and licensed by the laws of this State; second, because the indictment is insufficient in law, in that it does not charge that said tenpin alley was then and there kept and exhibited for the purpose of gaming; third, because said indictment is insufficient in law, and charges no offense against the laws of this State."

If it be conceded that it is an offense against the laws of this State to bet at a game of tenpins where the same has been licensed by law, then, under the authorities, the indictment in this case is good, and the court did not err in overruling the second ground of objection.  The indictment is under article 388, Penal Code, which provides, if any person shall bet or wager at any gaming table or bank, pigeonhole, Jenny Lind table, or nine or ten pin alley, such as is mentioned in the six preceding articles,

etc., he shall be fined not less than $10 nor more than $25. The Twenty-fifth Legislature, in Occupation Tax Act, article 5049, subdivision 19 (see General Laws 1897, Called Session, p. 51, article 5049, subdivision 19), enacted as follows: "From every nine or ten pin alley, or any other alley used for profit, by whatever name called, constructed or operated upon the principle of a bowling alley, and upon which balls, rings, or other devices are used as substitutes thereof, whether rolled, without regard to the number of pins used, or whether pins are used or not, or whether the balls, rings, or other devices are rolled by hand or with a cue or any other device, one hundred dollars. Any such alley used in connection with any drinking saloon, or any drugstore, or with any drugstore where intoxicating liquors are sold, or intoxicating liquors are sold or given away, or upon which money or anything of value is bet, shall be regarded as used for profit." It is contended by appellant that, because of the above enactment, the game of tenpins now being a licensed game, the criminal statute on this subject is annulled or repealed as to such licensed game. This question came before the Supreme Court of this State in the case of Houghton v. State, 41 Texas, 136. The court in that opinion held that, as the statutes then stood, both criminal and the occupation tax act, the betting at a licensed tenpin alley did not constitute an offense. The prosecution in that case was under the general act against betting at gaming banks or tables kept for the purpose of gaming, and before the game of tenpins was especially named. The occupation tax act at that time levied an occupation tax, among other things, on the game of tenpins without any proviso. The court in that case uses the following language: "While, unquestionably, it is the purpose of the law to punish the keeping or exhibiting for the purpose of gaming all gaming tables or banks of any name or description, or if used for gaming, whether they have a name or not, and that every species of gaming device known by the name of table or bank, and any and all games which in common language are said to be dealt, kept, or exhibited, are prohibited, it is clearly evident that it was not the purpose of the law to forbid or punish the exhibiting tables or the playing games which were expressly licensed. Betting of itself is not a violation of the Code. It is the betting at games, or on tables or banks which are prohibited, that constitutes the offense of gaming, which the law seeks to suppress. So, likewise, it is not the keeping or exhibiting of a table or game licensed and permitted by law which comes under the penalty attached to the keeping of any gaming table, kept or exhibited for the purpose of gaming, although wagers may be laid upon the game played upon such licensed table." In 1876 this question came before the Court of Appeals in the case of Chiles v. State, 1 Texas Criminal Appeals, 28. In the meantime the Act of 1873 had been passed, which specifically enumerated tenpin alleys as one of the inhibited games under the statute. The court in said case reaffirmed the view taken of this question in the previous case of Houghton, supra. See also Harris v. State, 9 Texas Crim. App., 308. In Reeves v. State, 12 Texas Criminal Appeals, 200, the question appears

to have been decided differently; but, when we examine that decision, it is obvious that the change in the opinion of the court is predicated on a change in the law. The party was there indicted for betting at a gaming table, to wit, a pool table. On the trial he produced a receipt to pursue said occupation. Previous to this, however, the Legislature had passed a new occupation tax act; but it was provided that the tax levied by this article upon bagatelle, pigeonhole, devil among the tailors, Jenny Lind table or anything of the kind, used for profit, and upon any nine or ten pin alley, or other alley used for profit, shall not be construed to exempt from the punishment prescribed by law any person who may violate any of the provisions of chapter 3 of the Penal Code of 1895. This clause in the occupation tax. act, it will be observed, wrought a material variance; for, while it authorized a license to be granted, it at the same time inhibited the exhibiting or betting at any of said prohibited games. The court held that the party was amenable to the criminal statutes, notwithstanding he had procured the license. Evidently, the opinion of the court is based upon this proviso in the statute. We think that decision was eminently correct, for when the party went to get his license he knew, in the face of that proviso, that he could not exhibit or keep for the purpose of gaming, or bet at, said prohibited game. Following this decision is Parker v. State, 13 Texas Criminal Appeals, 213. It will be noted in the Act of 1881 (and we cite it as a part of the history of legislation in regard to tenpin alleys in this State) that said act raised the occupation tax to $1000 upon every nine or ten pin alley used for profit; and with this was also coupled the provision above mentioned, reserving the operation of the penal statute on the subject. This continued to be the law until 1889. The Legislature in that year passed an act levying the same occupation tax, to wit, $1000, upon tenpin alleys; but it appears to have omitted from the same the above provision. Still, the amount of the tax was such that there were but few, if any, tenpin alleys in the State. In 1897, as before stated, the tax on nine and ten pin alleys was reduced from $1000 to $100; and since that time a great number of alleys have sprung into existence all over the State. We might content ourselves with simply following the decision of Judge Roberts in the Houghton Case, supra; but, inasmuch as it is insisted that said decision was erroneous, we will examine the question further.

It is insisted that the effect of the statute—that is, the occupation tax levied by the Twenty-fifth Legislature on tenpin alleys—does not in terms repeal the penal statute on the subject, making it an offense to bet at a game of tenpins, and that, as there is no repugnance between them, they both can stand; that is, that the game of tenpins can be played without betting thereon, and that it was the intention of the Legislature merely to license such a game. It is true that it is possible to play a game of tenpins without betting on the same, and that a person might construct a tenpin alley, and simply collect fees for the use of the same, without allowing the parties rolling to bet even the alley fees. But, consulting the history of legislation and the decisions on this subject and

the character of game customarily played, we can not believe that this was the intention of the Legislature. On the contrary, we think that the purpose of the Legislature in licensing the game was to authorize it to be played in the manner theretofore customary; that is, allowing the parties the use of the alley for the stipulated compensation for each game, and then, in order to induce players and to stimulate patronage, to permit such parties, as between themselves, to wager the alley fees on the game. This has been the ordinary method of running a tenpin alley; and this construction is conclusively settled by the verbiage of the occupation tax statute itself. This requires a license tax upon every tenpin alley used for profit, and this is further defined as used for profit when money or anything of value is bet thereon. As was said in the case of State v. Moseley, 14 Alabama, 390, and quoted with approval by our court in Harris v. State, supra: "That the Legislature intended to punish the exhibitors of such tables if they permitted betting to be carried on upon them, etc., and at the same time to license the use of such tables, seems to involve an absurdity. Further, the distinction that such tables are licensed for playing, and not for gaming, is a refinement which we think the framers of the statute did not intend." And we hold, in accordance with the view expressed in that case, that the obvious purpose of the Legislature in licensing tenpin alleys was to authorize the customary method of keeping such games for profit, which involves wagering the alley fees between the parties rolling or playing, and it is not in violation of the law to bet on such games. We accordingly hold that the court erred in refusing to quash the indictment. The judgment of the lower court is reversed, and the prosecution ordered dismissed.

*Reversed and dismissed.*